1

2

3

4                      UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    MARQUIS TRAVION LAND,                    Case No.  18-cv-07365-AMO

                 Plaintiff,
8
                                              **ORDER RE: DEFENDANTS'**
9         v.                                  **MOTIONS TO DISMISS**

10   S. RODRIGUEZ, et al.,                     Re: Dkt. Nos. 120, 126

                 Defendants.
11

12

13          Before the Court are Defendants Rodriguez, Villasenor, and Salas's partial motion to

14   dismiss (ECF 120) and Defendant Hatton's motion to dismiss (ECF 126).  The Court heard the

15   motions on April 14, 2025.  Having considered the parties' arguments made in their papers and at

16   the hearing, as well as the relevant legal authority, the Court **DENIES** Defendants Rodriguez,

17   Villasenor, and Salas's motion and **GRANTS** Hatton's motion for the following reasons.

18   I.      **BACKGROUND**

19          A.  **Factual Background**[1]

20          Plaintiff Marquis Travion Land has been incarcerated for over 20 years after receiving a

21   sentence of 25 years to life under California's three-strikes law.  Third Amended Complaint

22   ("TAC") (ECF 117) ¶ 22.  On the morning of March 17, 2017, Land was walking with other

23   inmates toward the dining hall at Soledad State Prison when three correctional officers –

24   Defendants Rodriguez, Villasenor, and Salas (collectively, "Defendant Officers") – positioned

25   themselves directly across from the entrance to the hall and stared down the inmates.  TAC ¶¶ 26-

26

27   ─────────────────────
     [1] As it must, the Court accepts Land's allegations as true and construes the pleadings in the light
28   most favorable to him.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031
     (9th Cir. 2008).

27. Rodriguez yelled at Land to come over, and although Land did not know why he had been called over, he complied. TAC ¶¶ 28-29. When Land approached, Rodriguez pinned him to the wall and yelled at him to place his hands against the wall. TAC ¶¶ 29-30. Land complied, and Rodriguez thoroughly patted Land down. TAC ¶ 31. Rodriguez proceeded to forcefully spread apart Land's legs, push Land into the wall with his elbow, and rubbed his hands against Land's genitals, while ordering him not to move. TAC ¶¶ 32, 36. Rodriguez then turned Land around, away from the wall, and forcefully grabbed Land's genitals. TAC ¶ 36. Land verbally protested, telling Rodriguez that he would report him for the sexual assault and harassment, and cried out for help and begged Rodriguez to let him go. TAC ¶¶ 36, 40. Villasenor and Salas walked over and cornered Land. TAC ¶¶ 41-42. Rodriguez then instructed Villasenor and Salas to get the other inmates inside the dining hall and lock the doors. TAC ¶ 43. The Defendant Officers then led Land down a hallway and told him to enter an empty holding cell. TAC ¶ 44.

There, Rodriguez ordered Land to take off his clothes. TAC ¶ 47. Land began removing his clothes, and Defendant Officers began beating him. TAC ¶¶ 50-53. Villasenor then put Land in a chokehold, causing Land to nearly lose consciousness. TAC ¶ 57. Defendant Officers put handcuffs on him. TAC ¶ 58. Land did not fight back or resist. TAC ¶ 56. Eventually, other prison officers came, as Defendant Officers had pressed the alarm button right before beginning to beat Land. TAC ¶ 58. Those officers took Land to the medical ward, still in restraints. TAC ¶ 60.

At the medical ward, prison medical staff examined Land. TAC ¶ 61. He sustained scars and dark bruises all over his body, and cuts inside his mouth. TAC ¶ 62. He also sustained long-term, chronic injuries including a severe tear to the labrum in his left hip, osteoarthritis in his hip, and debilitating lower back pain. TAC ¶ 63. Land is constantly in pain, which has affected his quality of life, as he is no longer able to exercise regularly as he used to do. TAC ¶ 63. The attack also caused significant mental and emotional trauma. TAC ¶ 64.

Defendant Officers filed a rules violation report accusing Land of instigating the attack. Complaint ("Compl.") (ECF 1) at 9, 13-19.[2] As a result, Land was sentenced to eleven months of

---

[2] The Court cites to certain exhibits filed with Land's original complaint but not attached as exhibits to the TAC. *See Kumar v. Mayorkas*, No. C 12-06470 MEJ, 2013 WL 5313718, at *1

1    solitary confinement. *Id.* at 9. After his release from solitary confinement, on December 12,

2    2017, Land filed a complaint using the California Department of Corrections & Rehabilitation's

3    ("CDCR") preprinted grievance form, called a "602 Complaint." Compl. at 26. Land filed a

4    second 602 Complaint on December 18, 2017, detailing additional information about the same

5    incident. Compl. at 45.

6        **B. Procedural History**

7        Land, representing himself, initiated this action by filing a complaint against Defendant

8    Officers on December 6, 2018, ECF 1, which the Court dismissed with leave to amend on April 9,

9    2019. ECF 7. Land filed a first amended complaint on May 3, 2019, ECF 8, which the Court

10   dismissed with leave to amend on August 14, 2019, ECF 15. Land filed a second amended

11   complaint on September 16, 2019. ECF 16. On January 8, 2020, the Court found the second

12   amended complaint stated cognizable Eighth Amendment claims, but dismissed the remaining

13   claims with leave to amend. ECF 18. On January 31, 2020, Land requested the Court proceed

14   with his Eighth Amendment claims only. ECF 19. On May 28, 2020, the Court reinstated the

15   second amended complaint as the operative complaint and ordered Defendants to respond by

16   October 5, 2020. ECF 22. On October 2, 2020, the Court granted Defendants' request to extend

17   their response deadline, and ordered Defendants to respond by January 18, 2021. ECF 24. On

18   November 5, 2020, Land filed a motion for appointment of counsel, ECF 27, which the Court

19   denied, ECF 30. Defendants subsequently sought two additional extensions of time to respond,

20   ECF 31, 41, which the Court granted.

21       On October 26, 2021, the Court dismissed the case, as mail sent to Land was returned as

22   undeliverable. ECF 65. On November 8, 2021, Land filed a motion to reopen the case, ECF 67,

23   which the Court granted on January 19, 2022, ECF 71. Defendants sought another extension of

24   time, ECF 67, and the Court set their response deadline as August 21, 2022, ECF 77. On July 11,

25   2022, Land filed a motion for leave to file an amended complaint, ECF 78, which Defendants

26   

27   (N.D. Cal. Sept. 23, 2013) ("Although Plaintiffs' First Amended Complaint supersedes their
     original Complaint, the Court refers to documents submitted as exhibits to the original pleading
28   that were not attached as exhibits to the First Amended Complaint.")

United States District Court
Northern District of California

1    opposed, ECF 79, and the Court denied, ECF 80.  On August 24, 2022, Defendants filed a notice

2    requesting that the Court refer the case to Judge Illman for settlement.  ECF 81.  Judge Illman held

3    a settlement conference on October 21, 2022, ECF 85, and again on December 22, 2023, ECF 91.

4    The case did not settle.

5         On May 22, 2023, the Court referred the case to the Federal Pro Bono Project.  ECF 93.

6    On September 6, 2023, the Court appointed pro bono counsel, ECF 99, and the case was

7    reassigned to the undersigned, ECF 101.  On October 21, 2024, Land filed a motion for leave to

8    file a third amended complaint, ECF 111, which the Court granted, ECF 116, and which Land

9    filed on November 13, 2024, ECF 117 – his first pleading filed with the assistance of counsel.

10   The TAC asserts claims against Defendants Rodriguez, Villasenor, and Salas for excessive force

11   in violation of the Eighth Amendment (Count 1), assault (Count 3), battery (Count 4), and

12   intentional infliction of emotional distress (Count 5); against Rodriguez for sexual assault (Count

13   2); and against a new defendant, Warden Shawn Hatton, for deliberate indifference in violation of

14   the Eighth Amendment (Count 6).  On December 4, 2024, Rodriguez, Villasenor, and Salas filed

15   the instant partial motion to dismiss, seeking dismissal of Land's claims against them arising from

16   state law.  ECF 120.  On December 27, 2024, Hatton moved to dismiss the deliberate indifference

17   claim against him.  ECF 126.

18   **II.      DISCUSSION**

19        Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure

20   to state a claim for which relief may be granted.  Rule 12(b)(6) requires dismissal when a

21   complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a

22   theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted).

23   Whether a complaint contains sufficient factual allegations depends on whether it pleads enough

24   facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

25   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible

26   "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

27   that the defendant is liable for the misconduct alleged."  *Id.* at 678.

28        When evaluating a motion to dismiss, the court "accept[s] factual allegations in the

United States District Court
Northern District of California

4

complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. However, "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted). The Court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

### A. Defendant Officers' Motion

The Defendant Officers move to dismiss Land's assault and battery claims against them, as well as the IIED claim against Villasenor and Salas, arguing Land has failed to comply with the California Government Claims Act. Under the California Government Claims Act, an individual who seeks to file suit against a public entity or its employees for money damages must first file that claim with the entity. Cal. Gov. Code §§ 905, 950. If the claim is denied, the individual must file a suit within six months, and if the agency does not respond to the claim, the individual must file a lawsuit within two years of the accrual of the cause of action. Cal. Gov. Code § 945.6. If a plaintiff who sues does not "allege facts demonstrating or excusing compliance with" this requirement, their complaint may be dismissed for failure to state a claim. *State of California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004). Claims that arise from an alleged sexual assault, however, are exempted from this requirement. Cal. Gov. Code § 945.9 ("A claim arising out of an alleged sexual assault by a law enforcement officer if the alleged assault occurred while the officer was employed by a law enforcement agency is exempted from all state and local government claim presentation requirements."). The Defendant Officers argue that Land has neither established that his claims are exempted from the claim presentation requirement nor that he has satisfied the requirement, and thus, the claims must be dismissed.

The Defendant Officers concede that Land's sexual assault and IIED claims against Rodriguez are exempted from the claim presentation requirement, *see* ECF 135 ("Officers' Reply") at 3-4, but argue the other state law claims against them are not, because they do not

United States District Court
Northern District of California

"arise from" a sexual assault.[3]  They contend that Defendant Officers' alleged conduct in the hallway and in the holding cell constitute "two separate and distinct incidents, each of them leading to separate and distinct claims."  Officers' Reply at 6.  Not so.  As Rodriguez was sexually assaulting Land, Land told Rodriguez he would report him for the sexual assault and harassment, and then cried out for help, at which point Villasenor and Salas walked over and cornered him. TAC ¶¶ 36-42.  Then, the Defendant Officers removed the other inmates from the area until only Land was left, and then they led Land down a hallway into a holding cell.  TAC ¶¶ 45-46.  Land was instructed to enter the holding cell, stay there, and remove his clothes.  TAC ¶¶ 48-52.  Then the Defendant Officers beat him.  TAC ¶¶ 50-52.  Together, these facts describe a unified sequence of events that began with Rodriguez's sexual assault of Land.  The trier of fact will ultimately determine if Land has proven his allegations, but at this stage, they sufficiently support a finding that "had the sexual assaults not occurred, [Land] would not have raised each of the claims."  *See Christina N. v. City of San Bernardino*, No. EDCV 24-1593-KK-AGRX, 2024 WL 5411376, at *7 (C.D. Cal. Oct. 18, 2024) (finding plaintiff's negligence and negligent hiring, supervision, and retention claims against the city were exempted under Section 945.9 where they "stem[med] from injuries caused by [the defendant police officer's] multiple alleged sexual assaults").  Thus, Land's assault and battery claims "arise out of an alleged sexual assault by a law enforcement officer" pursuant to Section 945.9 of the Government Code and are therefore exempt from the claim presentation requirement.

The legislative intent of the claim presentation exemption supports this result.  Section 945.9 was amended in 2021 to include the presentation exemption because the short time frame to present a claim frustrated the purpose of the extended statute of limitations for sexual assault of an adult, which is to account for the "variety of complex social and psychological reasons" that prevent survivors of sexual assault from coming forward right away.  California Bill Analysis, A.B. 1455 Assem., 4/7/2021.  In addition, without the exemption, survivors of sexual assault by a law enforcement officer would be required "to publicly present a claim while the officer most

---

[3] The Defendant Officers originally moved to dismiss the sexual assault and IIED claims, but withdrew their challenge in their reply.  Officers' Reply at 3-4.

United States District Court
Northern District of California

1    likely is still employed by the law enforcement agency and still in a potentially threatening

2    position of authority." *Id.* Here, it would make little sense to exempt Land from the claim

3    presentation requirement as to his sexual assault and IIED claims against Rodriguez, but require

4    him to present a claim as to Rodriguez's conduct and that of the other Defendant Officers forming

5    the basis of his assault and battery causes of action. To think that any fear or obstacles deterring

6    Land from presenting a claim against Rodriguez for sexual assault would not also deter him from

7    presenting claims against Rodriguez and the other Defendant Officers for assault and battery

8    defies logic. The Defendant Officers point to no authority requiring that the Court adopt this rigid

9    interpretation of Section 945.9, and the Court declines to do so. The Defendant Officers' motion is

10   **DENIED**.[4]

11       **B. Hatton's Motion**

12       Hatton moves to dismiss the Eighth Amendment deliberate indifference claim against him,

13   arguing Land failed to exhaust administrative remedies. The Prison Litigation Reform Act of

14   1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under

15   [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

16   correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

17   § 1997e(a). Because "failure to exhaust is an affirmative defense under the PLRA, . . . inmates

18   are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*,

19   549 U.S. 199, 216 (2007). It is only in "rare cases where a failure to exhaust is clear from the face

20   of the complaint [that] a defendant may successfully move to dismiss under Rule 12(b)(6) for

21   failure to state a claim." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014).

22       Hatton argues this is one such rare case. Although "the level of detail necessary in a

23   grievance to comply with the grievance procedures will vary from system to system and claim to

24

25   _____

26   [4] Land additionally argued that he timely presented his claim or that Defendants waived their right
     to assert that the claims are barred as untimely. Because the Court finds Land's claims against the
27   Defendant Officers exempted from the claim presentation requirement, it need not engage these
     arguments. Similarly, Defendants request for judicial notice of the Government Claims Program's
28   custodian of records' declaration – presented to evidence Land's failure to present a claim to the
     Government Claims Program between March 17, 2017 and December 31, 2018 – is **DENIED AS
     MOOT**.

1    claim, . . . it is the prison's requirements, and not the PLRA, that define the boundaries of proper

2    exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative

3    remedies prisoners must 'complete the administrative review process in accordance with the

4    applicable procedural rules,' – rules that are defined not by the PLRA, but by the prison grievance

5    process itself."). Hatton argues Land has not complied with the prison's requirements. *Id.* Land

6    was detained at Soledad State Prison, a CDCR institution. CDCR's procedural rules for

7    exhaustion of remedies are codified in the California Code of Regulations, title 15, § 3084.1 *et*

8    *seq.* At the relevant time, the regulations required that an inmate's grievance "shall list all staff

9    member(s) involved and shall describe their involvement in the issue," including "the staff

10    member's last name, first initial, title or position, if known, and the dates of the staff member's

11    involvement." *See* Cal. Code Regs. tit. 15, § 3084.2(a)(3). If the inmate lacks some of this

12    information, they "shall provide any other available information that would assist . . . in making a

13    reasonable attempt to identify the staff member(s) in question." *Id.*

14       Land correctly asserts that "[w]hen a prison's grievance procedures are silent or

15    incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the

16    wrong for which redress is sought.' " *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)

17    (citing and adopting the standard in *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). But the

18    grievance procedures here are not silent or incomplete as to factual specificity. At minimum, to

19    comply with the CDCR's requirements, Land's grievances must have provided some information

20    that would assist a reasonable attempt to identify the warden as a staff member involved in the

21    incident. Cal. Code Regs. tit. 15, § 3084.2(a)(3). Land contends that his grievance can be

22    "reasonably read as grieving how" Hatton, "as the warden and supervisor of the Defendant

23    Officers," had been "deliberately indifferent to the danger the Defendant Officers posed toward

24    inmates like Land and how he had failed to adequately train them to prevent sexual abuse and

25    violence." Plaintiffs' Opposition (ECF 129) at 9-10. The Court cannot agree. Land invokes

26    *Rivas v. Koenig*, No. 24-CV-00007-JST, 2024 WL 4894295 (N.D. Cal. Nov. 25, 2024), to no

27    avail. There, the court found plaintiff had shown exhaustion of a claim against a warden even

28    though the warden was not named in the grievance because the grievance described a failure to

1    manage the prison's response to the COVID-19 pandemic. *Id.* at *1. However, the plaintiff's

2    grievance in that case was more explicit than Land's. For example, the *Rivas* plaintiff alleged that

3    "[d]ue to the severe corona virus outbreak and the fact that the [Correctional Training Facility]

4    staff has failed to manage the outbreak effectively within the prison, I'm concern [sic] for my

5    safety" and that he had witnessed "many irregularities within the institution failing to contain the

6    virus." *Id.* His grievance stated that "if something does happen to me due to staff not following

7    guidelines within the institution my family and/or I will take legal actions against the CDCR

8    institution." *Id.*

9         Here, Land points to allegations in his grievance that Defendant Officers' attack was an

10    "abuse" of authority and "unprofessional[]" (Compl. at 28); that it was "a serious issue" for the

11    Defendant Officers to be "bias[ed], lazy, [and] unprofessional on a matter of [such] magnitude or

12    any matter when [they were] hired and depended on to do a job (Compl. at 29); that it was the

13    Defendant Officers' job to "uphold the law but in order to do so [they] have to know the law and

14    follow the law" (Compl. 48); and that the Defendant Officers' conduct was "unnecessary,

15    un[called] for, and just flat out wrong" as he was "already restrain[ed] and subdued" (Compl. at

16    48). In contrast to the *Rivas* grievances, Land's fall short of putting the institution on notice of a

17    possible claim against the warden or its management. Land's complaints included no "indication

18    that . . . suggested the warden was aware of the defendants' alleged conduct," or that "describe[d]

19    the warden taking, or failing to take, actions that deprived [the complainant] of any federally

20    guaranteed right." *Fordley v. Lizarraga*, 18 F.4th 344, 358 (9th Cir. 2021) (affirming district

21    court's finding that plaintiff failed to exhaust administrative remedies against a warden and

22    dismissing a deliberate indifference claim). Accordingly, Land has not exhausted remedies for his

23    claim against Hatton. Thus, the Court **GRANTS** Hatton's motion to dismiss. Because no new

24    allegations could remedy the deficiencies of his grievance, dismissal is without leave to amend.

25    //

26    //

27    //

28    //

United States District Court
Northern District of California

9

**III.    CONCLUSION**

For the foregoing reasons, the Defendant Officers' motion is **DENIED** and Hatton's motion is **GRANTED** without leave to amend.  Defendant Officers' answer is due by July 7, 2025.  The Court sets a further case management conference for August 7, 2025.  Joint case management statement due no later than noon on July 31, 2025.

**IT IS SO ORDERED.**

Dated: June 16, 2025

A~~raceli Mart~~ínez-Olguín

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**

United States District Court
Northern District of California

10